# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0494V

|  |  |
|---|---|
| LOUIS BRANDT,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: June 14, 2023 |

*Danielle Strait, Maglio Christopher & Toale, PA, Seattle, WA,* for Petitioner.

*Lauren Kells, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION AWARDING DAMAGES[1]

On January 11, 2021, Louis Brandt filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of an influenza ("flu") vaccine received on October 21, 2019, he suffered a shoulder injury related to vaccination ("SIRVA") as defined on the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although a ruling on entitlement in Petitioner's favor was issued in June 2022, the parties have been unable to resolve damages on their own.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$65,730.38 (representing $65,000.00 for actual pain and suffering, plus $730.38 for actual unreimbursed expenses).**

## I. Procedural History

A month after filing his petition, Mr. Brandt filed the medical records and the signed declaration[3] required under the Vaccine Act. Exs. 1-10, filed Jan. 27, 2021, ECF Nos. 5-6; *see* Section 11(c). On April 21, 2021, Petitioner's filings were deemed sufficiently complete, and the case was assigned to the SPU (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 10.

While awaiting Respondent's tentative position, Petitioner filed updated medical records. Ex. 11, filed Nov. 18, 2021, ECF No. 19.[4] On June 8, 2022, Respondent filed his Rule 4(c) Report conceding Petitioner was entitled to compensation; a Ruling on Entitlement was issued two days later. ECF Nos. 29, 31.

On August 10, 2022, Petitioner confirmed that he had rejected Respondent's proffer, and moved for a formal adjudication of damages. Petitioner's Motion for a Ruling on the Record for Damages ("Brief") filed August 10, 2022, ECF No. 34; *see also* Respondent's Response ("Response") filed Oct. 17, 2022, ECF No. 37; Petitioner's Reply ("Reply"), filed Nov. 1, 2022, ECF No. 38.[5] The matter is now ripe for adjudication.

## II. Authority

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined

---

[3] Rather than an affidavit, the statement provided by Petitioner is a declaration signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746.

[4] Petitioner also filed a supplemental declaration attesting that there were no *outstanding* medical records. Ex. 12, filed Jan. 27, 2022, ECF No. 24. This declaration is not particularly germane to the parties' arguments or to my own assessment of damages.

[5] Petitioner's attorney of record up to and including submission of his Reply Brief was LeeAnne Pedrick at Maglio, Christopher, & Toale, P.A. Petitioner filed a motion to substitute Ms. Strait as new counsel on January 20, 2023, ECF No. 40, which the Clerk of Court granted on January 23, 2023 (Non-PDF).

to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[6] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the

---

[6] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

### III.   Prior SIRVA Compensation Within SPU[7]

#### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2023, 3,031 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,950 of these cases, with the remaining 81 cases dismissed.

Of the compensated cases, 1,677 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 148 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[8]

1,501 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

---

[7] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[8] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

The remaining 1,273 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[9] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *148* | *1,501* | *28* | *1,273* |
| **Lowest** | $40,757.91 | $22,500.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,382.97 | $65,000.00 | $90,000.00 | $40,000.00 |
| **Median** | **$93,649.92** | **$85,000.00** | **$122,886.42** | **$56,250.00** |
| **3rd Quartile** | $125,000.00 | $112,654.00 | $161,001.79 | $82,500.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

**B. Pain and Suffering Awards in Reasoned Decisions**

In the 148 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $90,000.00 as the median amount. Only seven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[10]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed

---

[9] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[10] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In six cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## IV.   Appropriate Compensation for Petitioner's Pain and Suffering

### A.   Consideration of the Evidence

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult, with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In performing this analysis, I have reviewed the record as a whole, including all medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I also have taken into account prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances of this case.

The medical records establish that Mr. Brandt was a 64-year-old retiree when he received the subject vaccine in his dominant right arm on October 21, 2019. Approximately two weeks later, he returned unscheduled to his primary care practice to report ongoing "soreness" in the deltoid muscle and shoulder. Ex. 9 at 484. He secured the first available appointment with his primary care provider ("PCP") a few days later on November 8, 2019, at which he reported persistent pain particularly with motion. *Id.* at 53. He denied any redness or swelling, and he had not tried applying heat or ice to the area.

*Id.* He had taken ibuprofen 400mg "occasionally" without apparent improvement. *Id.* His active range of motion was reduced due to pain. *Id.*

Later in November 2019, Petitioner notified his PCP that ice, heat, and ibuprofen had delivered "no relief." Ex. 9 at 27. An x-ray revealed tendinosis fraying of the bursal surface; small partial-thickness bursal surface tear of the right infraspinatus; and impingement. *Id.* at 69. Petitioner inquired about steroids, but the PCP instead recommended higher-dose ibuprofen or naproxen. *Id.* at 26.

At his initial physical therapy ("PT") evaluation on January 21, 2020, Petitioner reported pain of 4/10, with some "mild" impacts (e.g., difficulty washing his back, socializing, and sleeping). Ex. 6 at 88-89. He had long head biceps tendon tenderness and decreased right shoulder flexion (160/169 degrees), but normal abduction and strength. *Id.* at 89. The therapist viewed the injury to be "uncomplicated." *Id.* at 90. He would attend PT twice a week for six weeks, plus self-massage and ice daily. *Id.*

By the twelfth PT appointment on March 2, 2020, Petitioner had improved flexion (180/177 degrees), strength, proprioception, and coordination. Ex. 6 at 55. However, he "really d[idn't] see any improvement" in pain level, prompting a pause from PT. *Id.* at 55.

Also in March 2020, an MRI revealed tendinosis, fraying of the bursal surface, a small partial-thickness bursal surface tear of the supraspinatus, no labral tear, and a small amount of subdeltoid subacromial fluid. Ex. 2 at 83; *see also* Ex. 9 at 65 (subsequent PCP appointment). Between May 11 - 26, 2020, Petitioner attended four more PT sessions. Ex. 6 at 29-44.

At his May 27, 2020, initial orthopedics evaluation, Petitioner reported that the pain increased with overhead motion and cross-shoulder reaching. Ex. 3 at 1. The pain did not awaken him from sleep. *Id.* PT had delivered "some relief." *Id.* The orthopedist documented "some tenderness on the right acromioclavicular joint," positive impingement, and full range of motion. *Id.* at 1-2. The orthopedist considered that the vaccine may have aggravated a previously asymptomatic, chronic rotator cuff tear and arthropathy. *Id.* Alternatively, the vaccine needle may have newly caused the rotator cuff tear. *Id.* She discouraged a steroid injection on balance: it "would likely result in pain relief, however, it may also result in compromised tissue to bone healing." *Id.* She "did recommend right shoulder arthroscopic rotator cuff tear repair if he has continued symptoms, however, upon further discussions, he feels that PT has been helping him and he is scheduled to undergo further PT sessions." *Id.*; *see also* Ex. 7 at 1 (second X-ray of the shoulder).

7

Between May 29 – June 17, 2020, Petitioner attended five more PT sessions. Ex. 6 at 1-28. He also maintained a home exercise program ("HEP") with weights. *Id.* at 23. He reported diminishing and periodic soreness which was manageable with ibuprofen. *Id.* at 18, 19, 21. He reported "doing well": "At this point, I don't think that I need a surgery. *Id.* at 7. Upon discharge, he had "improved strength" and "minimal c/o [complaints of] pain," and would continue with the HEP. *Id.* at 5.

During an October 11, 2020, telehealth encounter, the PCP recorded: "[Petitioner] has been attending 3 months of physical therapy with Janet Lee followed by a home exercise program using a 5-pound dumbbell; he states the pain is manageable at the moment and [he] may consider surgery in the future if this starts to become unmanageable." Ex. 9 at 271. The records of another telehealth encounter in August 2021 include the same information verbatim, with no changes or updates – raising potential that the information was merely carried forward from the last record, rather than reflecting any active complaint regarding Petitioner's right shoulder that persisted up to August 2021 (or beyond). Ex. 11 at 39-40. Petitioner's affidavits do not address his ongoing condition. Exs. 8, 12. It is also noted that from September - November 2020, Petitioner attended 12 PT sessions to address neck strain and cervicalgia, but not his shoulder. *See, e.g.*, Ex. 9 at 297-98 (discharge summary).

### B. Analysis

The evidence reflects a SIRVA that was mild overall. Mr. Brandt experienced the onset of acute shoulder pain in October 2019, and he sought medical attention within approximately two weeks. Imaging revealed moderate pathology including a rotator cuff tear and arthropathy.

However, Petitioner underwent only conservative measures (ice, heat, ibuprofen, and physical therapy). He consistently characterized the injury as soreness or fatigue, and he never reported pain above 4/10. He experienced mildly limited range of motion which was restored by PT (totaling 22 sessions over five months). His formal treatment ended upon discharge from PT – eight months after vaccination, in June 2020. Beyond that point, Petitioner may well have experienced some mild ongoing pain and continued with the HEP, but that is not sufficiently corroborated to warrant an increase to the damages award. As noted above, the October 2020 medical record includes only Petitioner's self-report of manageable pain, and that information appears to have been merely carried over to the subsequent medical records in August 2021. And while Petitioner received one *recommendation* of surgery, surgery was ultimately not *required*, because the injury was otherwise manageable with conservative measures and resolving.

Petitioner requests $100,000.00 for his actual pain and suffering. Brief at 9-10. He avers that the pain and suffering resulting from his SIRVA is similar to that recognized in *Harper*, *Young*, *Cooper*, *Danielson*, and *Fry*.[11]

Respondent emphasizes that Petitioner underwent a more limited course of treatment when contrasted with the facts in such prior cases. Response at 8. Thus, the *Young* petitioner underwent over 50 PT sessions, "speak[ing] to the severity of his injury." *Young*, 2019 WL 396981, at *6. And while Petitioner suggests that the *Young* treatment course totaled just three months, the *Young* petitioner – who was himself a medical doctor – initially self-treated with pain medications, steroids, and rest. Brief at 6; *Young*, 2019 WL 396981, at *2. That initial period should be counted as part of the treatment course. *Cooper* and *Danielson* included significantly more treatment, over longer durations, than the present case. *Cooper*, 2018 WL 6288181 at 12-13; *Danielson*, 2020 WL 8271642 at *3-5.

Respondent also avers that a limited course of treatment may be explained by unique circumstances (such as advanced age, comorbidities, or competing personal obligations) which are not present in this case. Response at 8. For example, the *Harper* petitioner did not undergo recommended treatments because of her concurrent pregnancy and need to care for her newborn. *Harper*, 2021 WL 5231980, at *2-4. Similarly, the *Fry* petitioner did not undergo surgery on her shoulder due to her advanced age and multiple comorbidities. *Fry*, 2020 WL 8457671 at *7. I agree that Mr. Brandt did not experience any similar obstacles to treatment.

Respondent proposes that Petitioner's pain and suffering is instead, comparable to what was recognized in *Aponte*, *Dagen*, *Bartholomew*, and *George* – supporting an award of between $60,000.00 to $67,000.00. *Id.* at 7-10.[12]

---

[11] *Harper v. Sec'y of Health & Human Servs.*, No. 18-020V, 2021 WL 5231980 (Fed. Cl. Spec. Mstr. Oct. 8, 2021) (awarding $92,000.00 for actual pain and suffering); *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019) ($100,000.00); *Cooper v. Sec'y of Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) ($110,000.00); *Danielson v. Sec'y of Health & Human Servs.*, No. 18-1878V, 2020 WL 8271642 (Fed. Cl. Spec. Mstr. Dec. 29, 2020) ($110,000.00); *Fry v. Sec'y of Health & Human Servs.*, No. 18-1091V, 2020 WL 8457671 (Fed. Cl. Spec. Mstr. Dec. 16, 2020) ($120,000.00).

[12] *Aponte v. Sec'y of Health & Human Servs.*, No. 20-1031V, 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sept. 2, 2022) (awarding $60,000.00 for actual pain and suffering); *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) ($65,000.00); *Bartholomew v. Sec'y of Health & Human Servs.*, No. 18-1570V, 2020 WL 3639805 (Fed. Cl. Spec. Mstr. June 5, 2020) ($67,000.00); *George v. Sec'y of Health & Human Servs.*, No. 18-0426V, 2020 WL 4692451 (Fed. Cl. Spec. Mstr. July 10, 2020) ($67,000.00).

*George*, *Bartholomew*, *Dagen*, and *Aponte* all feature similar facts as Petitioner's case – as Petitioner himself seems to acknowledge. Reply at 4 (stating only "Both *Respondent's* and Petitioner's cited cases *include similar facts to Mr. Brandt's case*") (emphasis added). Overall, I find that *Dagen* offers the best comparison to the facts and circumstances seen here. The *Dagen* petitioner presented for medical treatment approximately two weeks after vaccination, and reported some difficulty with daily activities and sleep. *Dagen*, 2019 WL 7187335 at *9. After approximately seven months of treatment including 16 PT sessions, Ms. Dagen's pain level, range of motion, and strength had improved, and she was discharged with home exercises. *Id.*[13] I find that Petitioner should receive the same amount of compensation for her pain and suffering as awarded in *Dagen* - $65,000.00.

## Conclusion

Based on the record as a whole and the parties' arguments, I award Petitioner a lump sum payment of **$65,730.38 (representing $65,000.00 for actual pain and suffering,[14] plus $730.38 for actual unreimbursed expenses).[15]** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[13] I recognize that there appears to be more significant pathology visualized by MRI in Mr. Brandt's case, compared to Ms. Dagen. But conversely, Ms. Dagen's receipt of both oral and injected steroids suggests more significant early pain.

[14] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[15] The parties have stipulated to the expenses. Brief at 2; Response at 5.

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.